# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### URBANA DIVISION

| | |
|---|---|
| YONG-QIAN SUN, ) | |
|                                   **Plaintiff,** ) | |
| v.    ) | |
|    ) | |
| BOARD OF TRUSTEES OF THE ) | Case No. 03-2221 |
| UNIVERSITY OF ILLINOIS, RICHARD ) | |
| HERMAN, DAVID E. DANIEL, ROBERT ) | |
| AVERBACK, JOHN H. WEAVER, IAN ) | |
| M. ROBERTSON, AND JOSEPH E. ) | |
| GREENE, ) | |
|                                  **Defendants.** ) | |
|    ) | |

## **OPINION**

On June 23, 2005, this court entered an Order (#40) which accepted the Report and Recommendation (#37) filed by Magistrate Judge David G. Bernthal in the above cause on June 3, 2005. This court's seven-page Order set out, in detail, Defendants' well-documented failures to comply with their obligation to provide written discovery. This court also discussed Defendants' violations of orders entered by Judge Bernthal, violations which occurred despite Judge Bernthal's numerous explicit warnings and despite the imposition of monetary sanctions by Judge Bernthal. This court therefore GRANTED Plaintiff's Third Motion for Sanctions (#34). Accordingly, the pleadings of all Defendants were stricken, all Defendants were defaulted, and Plaintiff was allowed to proceed. In addition, Plaintiff was awarded his fees and costs related to the bringing of the motion. Plaintiff was therefore instructed to file an affidavit of fees and costs, which he did on June 24, 2005 (#42), seeking payment of $632.00. Defendants have not filed any objection to the amount of this request. Accordingly, Defendants are hereby ordered to pay Plaintiff $632.00 in fees and costs.

On June 28, 2005, new counsel filed their appearance on behalf on Defendants. On July 1, 2005, Defendants filed a Motion to Vacate Default Judgment (#47), with attached affidavits, a Memorandum in Support (#49), and a sealed document (#48) regarding the medical condition of Michael Cornyn, one of Defendants' attorneys. On July 6, 2005, Plaintiff filed a Memorandum of Law in Opposition to Defendants' Motion to Vacate Default Judgment (#50). This court has carefully reviewed the arguments of the parties and the documents provided. Following this careful review, this court concludes that the default judgment against Defendants should be vacated. Accordingly, Defendants' Motion to Vacate Default Judgment (#50) is GRANTED. However, this court strongly agrees with Defendants that Plaintiff must be accommodated with a sanction this court feels is appropriate. Therefore, this court is imposing alternate sanctions.

On July 27, 2005, Plaintiff filed his Fourth Motion to Compel Compliance with Written Discovery Requests (#52). This Motion (#52) is GRANTED.

## BACKGROUND

On January 12, 2004, Plaintiff, Yong-Qian Sun, filed his Amended Complaint (#4) in this case against Defendants Board of Trustees of the University of Illinois, Richard Herman, David E. Daniel, Robert Averback, John H. Weaver, Ian M. Robertson, and Joseph E. Greene. Plaintiff alleged employment discrimination in violation of Title VII of the Civil Rights Act of 1964 and also claimed violations of his rights under 42 U.S.C. § 1983.

On February 17, 2004, the Board of Trustees, through their attorney Michael R. Cornyn, filed a Motion to Dismiss (#5).[1] On March 19, 2004, Attorney William J. Brinkman filed an Entry of

---

[1] This motion, and a subsequent motion to dismiss, were granted in part and denied in part by this court.

Appearance (#9) on behalf of the Board of Trustees. On April 13, 2004, Cornyn and Brinkman filed an Entry of Appearance (#11) on behalf of the individual Defendants. On June 3, 2004, a Rule 16 hearing was held before this court and Judge Bernthal. Both Cornyn and Brinkman appeared on behalf of Defendants at the Rule 16 hearing. Following the hearing, on June 7, 2004, a Discovery Order (#20) was entered by Judge Bernthal. The Discovery Order provided detailed discovery deadlines. The Order stated that all discovery was to be completed by July 15, 2005, and that the deadline for filing case dispositive motions was August 15, 2005. This case was scheduled for a final pretrial conference before this court on December 22, 2005, at 10:00 a.m. and for a jury trial on January 9, 2006, at 8:30 a.m.

As noted, there were numerous problems with Defendants providing written discovery, which culminated in this court's Order (#40) which defaulted all Defendants. On July 1, 2005, Defendants filed a Motion to Vacate Default Judgment (#47).

On July 21, 2005, the parties filed a Joint Motion to Extend Discovery Deadlines (#51). In their Joint Motion, the parties stated that they recognized that this court had not yet ruled on Defendant's Motion to Vacate Default. The parties stated that "however the Court rules on the Motion to Vacate, additional discovery will be required so that both parties will be able to present evidence on whatever issues will ultimately be presented to the jury."

A telephone status conference was held regarding the Joint Motion on July 22, 2005, before this court and Judge Bernthal. After hearing from counsel, this court granted the motion. Accordingly, the deadline for completing discovery was extended to September 30, 2005. The deadline for filing case dispositive motions was extended to October 28, 2005. The case was scheduled for a final pretrial conference on February 3, 2006, at 1:30 p.m. and for jury trial on

3

February 21, 2006, at 9:00 a.m. At the hearing, Plaintiff's counsel stated that he still had not received some requested documents from Defendants. Defendants' counsel stated objections had been made to providing some of the requested documents. This court reminded Defendants' counsel that no timely objections were made in this case, so that any objections have been waived. It is this court's recollection that Plaintiff's counsel was instructed that, if the requested documents were not received, Plaintiff should file a Motion to Compel.

## I. MOTION TO VACATE DEFAULT

### A. ARGUMENTS PRESENTED

#### 1. Defendants' innocence of misconduct

In their Memorandum, Defendants first argue that this court should vacate the default judgment against Defendants because Defendants were personally innocent of any misconduct in this case. Defendants argue that the failures in this case were, instead, the result of Cornyn's medical conditions. Defendants argue that "Cornyn's recent conduct is out of character with his behavior in the course of a distinguished career, much of it in federal court." In support of this argument, Defendants presented the affidavits of Michael Cornyn, William J. Brinkman, and Mark Henss. Defendants also supplied a "Discovery Chronology" which purported to show that all written discovery has now been provided.

In his affidavit, dated July 1, 2005, Attorney Cornyn stated that he was one of the attorneys charged with representing all Defendants in this lawsuit. Cornyn further stated that he was the person in charge of coordinating and finalizing the discovery compliance of all Defendants to the Interrogatories and Requests to Produce which were forwarded to Defendants by Plaintiff's counsel. He stated that, in conjunction with that responsibility, he contacted all of the Defendants with

respect to discovery in this case. Cornyn stated that, "[w]ithout exception, all Defendants were fully cooperative with me in providing the discovery I requested and the answers to interrogatories." Cornyn stated that he did not, at any time, advise Defendants of the existence of the three motions to compel filed by Plaintiff or of Judge Bernthal's orders. Cornyn stated that "Defendants were never aware of the orders entered by the Court and never apprehended that they were in violation or potential violation of any such orders at any time prior to June 23, 2005." Cornyn stated that he did advise Mark Henss of the Office of University Counsel that the first Motion to Compel was filed, an order entered and sanctions granted. Cornyn stated that he informed Henss "that the problem would be worked out quickly and written discovery was nearly completed." Cornyn stated that he did not, at any time, inform Henss of the second or third motions to compel, or orders relating to those motions. Cornyn also stated:

> I have recently been diagnosed as suffering from two serious conditions, and the doctor who provided said diagnosis has advised me that he believes that these conditions lasted for at least six months. A report from Dr. David Whitehill confirming and explaining that diagnosis has been forwarded to Plaintiff's counsel. A motion to file that report under seal has been filed. I ask that said report be kept under seal and not made available to the public.
>
> I believe that the conditions from which I was suffering interfered with my ability to properly manage the defense of this case for each of the Defendants, to their detriment.

As noted, Defendants filed, under seal, a letter from Dr. David L. Whitehill related to Cornyn's

5

medical condition. Dr. Whitehill stated that evaluations of Cornyn "have resulted in two significant medical diagnoses" and that Cornyn "has decided to take a short-term medical leave of absence to help in addressing these issues."

In his affidavit, dated June 30, 2005, Attorney Brinkman stated that he is counsel of record in this case but that "Cornyn had performed virtually all of the work on this file and was so doing exclusively during 2005, until June 24, 2005." Brinkman stated that he was aware of the first motion to compel but was assured by Cornyn that the order was being complied with. Brinkman stated that, until June 24, 2005, he had "no personal knowledge" of the second or third motion to compel, Judge Bernthal's Report and Recommendation or this court's Order accepting it. Brinkman stated that he did not discuss any of these matters with Defendants, Mark Henss or anyone at the University of Illinois Office of University Counsel.

Mark Henss is an attorney employed by the University of Illinois Office of University Counsel. In his affidavit, dated June 30, 2005, Henss stated that he is the assigned in-house counsel who is the contact person at the University for this case. Henss stated that it was his understanding that Cornyn was the attorney actively representing Defendants in all discovery issues in this matter. Henss stated that he was the in-house counsel to whom Cornyn would report any significant developments. He stated that he and Cornyn agreed that Cornyn should contact all Defendants directly to facilitate their compliance with discovery in this case, except for Chancellor Herman, whose contact with Cornyn was facilitated by Henss. Henss corroborated Cornyn's affidavit and stated that Cornyn advised him, regarding the first Motion to Compel, that the problems would be worked out quickly and that the written discovery was nearly completed. Henss stated that he was not advised by Cornyn, or anyone else in Cornyn's office, of the filing of the second or third motion

to compel and was unaware that no response was made to these motions by Cornyn on behalf of Defendants. Henss stated that he was not aware of Judge Bernthal's Report and Recommendation or this court's Order accepting it, until June 24, 2005. Henss stated that, had he been aware of Cornyn's failure to respond to the second and third motions to compel, he "would have immediately taken steps to see to it that those failures were addressed and eliminated." Henss stated "[t]he University does not take these cases lightly. . . . <u>They are never ignored</u>."

In his Memorandum of Law in Opposition to Defendants' Motion to Vacate Default Judgment (#50), Plaintiff argues that the record shows that Defendants themselves violated discovery orders and did not provide documents even after the default judgment recommendation. Plaintiff contends that Defendants' argument that they "were personally innocent of any misconduct" would be true if all of the Defendants indeed provided all the written materials to their attorneys before the first motion to compel was filed and Cornyn simply did not pass the documents and answers to interrogatories on to counsel for Plaintiff. Plaintiff contends that the record shows that this was not the case. Plaintiff notes that a number of documents provided by Defendants were printed by Defendants' equipment and the date generated automatically by the printing machine shows that they were printed on May 17, 2005, May 18, 2005, and June 6, 2005. Plaintiff argues that these late-printed documents, some of which were printed after Judge Bernthal made his default recommendation, show that "some of the defendants did not even print the requested documents, let alone provide them to Attorney Cornyn, until well after the court orders were issued" and even after Judge Bernthal made the recommendation for default judgment. Plaintiff further points out that, if Cornyn's statement that Defendants were never aware of the orders entered by the court was true, the printing of these documents "means that six months after the discovery due date some of

the defendants suddenly realized on their own that the requested documents needed to be submitted and voluntarily started to print the documents at about the same time without being warned or being told that they had been committing a serious discovery violation." Plaintiff argues that Cornyn's affidavit statement simply strains credibility. Plaintiff further stated that, as of the date of his Memorandum, some documents requested had still not been provided. Plaintiff argued that Defendants have been properly sanctioned for their own failure to participate in discovery and to obey court orders, as well as for the failure of their attorneys.

Plaintiff further argued that, even if only Cornyn was responsible for the violations of the court orders, Defendants are bound by his conduct, noting that the Seventh Circuit has stated:

> [A] client is bound by his chosen agent's deeds, whether it be negligence, gross negligence, or even wilful conduct. 'Holding the client responsible for the lawyer's deeds ensures that both clients and lawyers take care to comply. If the lawyer's neglect protected the client from ill consequences, neglect would become all too common.'

United States v. 8136 S. Dobson Street, Chicago, Ill., 125 F.3d 1076, 1084 (7th Cir. 1997) (internal citation omitted).

Plaintiff also takes issue with Defendants' assertion that Cornyn's behavior in this case was out of character for him, noting that Cornyn has in the past handled written discovery requests in a manner similar to his handling of written discovery requests in this case, which also led to the entry of a default judgment against his client. Plaintiff then referred to the case of Robinson v. City of Champaign, Case No. 00-CV-2315, also filed in this court. Plaintiff noted that, in the Robinson case, Cornyn represented Defendant James Peterson from November 2000 to December 2002. In

that case, default judgment was entered against Peterson when Peterson failed to provide answers to written interrogatories six months after their due date. In <u>Robinson</u>, also, Cornyn filed a motion to vacate the default and argued that his client was unaware of the motions, orders and sanctions because the client could not be located. This court did not find Cornyn's explanation credible and denied the motion to vacate.

In addition, Plaintiff takes issue with the medical explanation provided for Cornyn's behavior. Plaintiff notes that Dr. Whitehill is an associate professor at the University, and his statement regarding Cornyn's medical condition is beneficial to his employer, Defendant Board of Trustees, and his superior, Defendant Chancellor Herman. Plaintiff also points out that Dr. Whitehill's letter is extremely short on details, such as whether he had seen Cornyn before and the nature of his appointment to provide the assessment of Cornyn. Plaintiff further notes that Dr. Whitehill practices in the area of "family practice" and may not be particularly suitable to evaluate Cornyn's "two serious conditions" which are outside his area of specialty. Plaintiff also stated:

> Attorney Cornyn conducted a six-hour deposition of Plaintiff on June 20, 2005, a few days before Dr. Whitehill's assessment of his physical and mental conditions. The deposition was intense and focused. Plaintiff and his Counsel saw no sign that Mr. Cornyn did not or could not conduct the deposition as aggressively or as long as they had anticipated.

Plaintiff also argues that Cornyn's mental and physical conditions, even if confirmed and serious, are not a valid reason for reversing a discovery sanction. Plaintiff relies on <u>Tango Music v. DeadQuick Music</u>, 348 F.3d 244 (7th Cir. 2003). In <u>Tango Music</u>, the Seventh Circuit rejected the

9

plaintiff's argument that it should be excused for its failure to prosecute the case because of its attorney's depression. Tango Music, 348 F.3d at 247. The Seventh Circuit noted that the plaintiff was not a "hapless individual" and had "to take responsibility for the actions of its agents, including the lawyers whom it hires." Tango Music, 348 F.3d at 247.

Finally, Plaintiff argues that Attorney Brinkman waived his defense on the basis of lack of knowledge about the motions, orders, and sanctions filed in this case by registering with the Electronic Case Filing System of the United States District Court of the Central District of Illinois. Plaintiff notes that Brinkman was a recipient by electronic means of each and every one of the motions, orders, docket entries, and reports and recommendations generated in this case since February 8, 2005.

2. Court should have given direct notice to Defendants

Defendants, remarkably, argue that the sanctions imposed in this case are really the fault of the court, not Defendants. They contend that this court should have given Defendants direct notice of the failures of their counsel, while conceding that "[o]bviously, this is not something which is required of the Court."

In his Memorandum in Opposition, Plaintiff argues that this contention by Defendants is entirely and completely without merit. Plaintiff notes that the cases cited by Defendants for this remarkable proposition are completely inapposite because those cases involved "unsophisticated clients," unlike the professors and high-level university administrators who are Defendants in this case. See Dunphy v. McKee, 134 F.3d 1297 (7th Cir. 1998); Ball v. City of Chicago, 2 F.3d 752 (7th Cir. 1993). Plaintiff notes that, in Dunphy, the neglected client was a prison inmate who made frequent, sometimes nearly monthly, inquiries with the court about the progress of his case.

10

Dunphy, 134 F.3d at 1299. Plaintiff notes that, in comparison, "Defendants in this case and their internal legal counsel presented no evidence as to whether they even inquired with their own attorneys, let alone the Court, about the progress of the lawsuit after they became aware of the first sanction." Plaintiff further points out that the docket in this case, including the full text of motions and orders, is available to the public on the world-wide-web. Plaintiff argues that if prison-inmate Dunphy could write frequent letters to the court from his prison cell, "surely it is much less of an effort for Defendants in this case and their legal staff to log on to the Court's web page and find out if their attorneys are doing the job they were retained to perform." Plaintiff further notes that the Seventh Circuit stated in Ball that a "judge is not obligated to treat lawyers like children." Ball, 2 F.3d at 755. Plaintiff argues that the "University's own lawyers should have become vigilant after they knew about the first sanction and order, should have acknowledged their own failure to track this lawsuit after they became aware of the first warning sign, and should certainly not attempt to shift the blame to others, including the Court, for not notifying them of something that they knew had happened to them once already."

3.  Defendants have a meritorious defense to Plaintiff's claim

Defendants also argue that the default should be vacated because they have a meritorious defense to Plaintiff's claim and "are entitled to have a judicial determination" of the merits of Plaintiff's claim against them. Defendants argue that a default judgment is not merely an issue of money, because Plaintiff is seeking reinstatement, and note that Defendants' "conduct in their capacity as employees of the University of Illinois is at issue in this litigation." In support of these arguments, Defendants attached the affidavit of Defendant Ian M. Robertson, dated July 1, 2005, who baldly asserts that "Plaintiff's national origin, race, or membership in any other protected class

did not affect the procedures by which Plaintiff's application for tenure was processed."

In response, Plaintiff argues that the default should not be vacated because Defendants' failure to participate in discovery has brought substantial prejudice to Plaintiff. Plaintiff argues that Defendants have caused a total of about 12 months' delay to the discovery phase of this case. Plaintiff notes that, so far, only Plaintiff's deposition has been taken in this case and that some written discovery has still not been provided to Plaintiff. Plaintiff argues that, if the default is vacated, it may well prove impossible for the parties to try the case as scheduled in January 2006, causing substantial prejudice to Plaintiff.

        4.  Court should have considered alternate sanctions rather than default

Defendants argue that this court should have considered the possibility of sanctioning the attorney in this case, Cornyn, rather than Defendants. However, Defendants then state that, given what is now known about Cornyn's medical condition, sanctions against Cornyn would not be appropriate. Defendants also contend that they were penalized too harshly for the conduct of their counsel. They argue that, under the circumstances here, the entry of default was too harsh a sanction and this court should have imposed a lesser sanction than default. Notably, Defendants have not made any suggestions as to what an appropriate "lesser" sanction might be in this case. Defendants ask that this court vacate the default and impose "such sanctions as the Court deems appropriate." Defendants ask that this court allow the case to proceed "accommodating the Plaintiff with whatever sanction the Court feels is appropriate under the circumstances."

As noted, Plaintiff disagrees that a sanction other than default would be appropriate in this case and argues that Defendants' lengthy delays have caused substantial prejudice to Plaintiff, prejudice making the default remedy the only appropriate remedy in this case.

B.  ANALYSIS

This court is not persuaded by Defendants' first two arguments.  This is not a case where Defendants are totally innocent of any misconduct.  This court agrees with Plaintiff that the record does not support a conclusion that Defendants fully complied with written discovery in a timely manner and Cornyn simply did not provide the responses to Plaintiff.  The record clearly shows that Defendants did not provide documents and answers to interrogatories until months and months after the deadline.  Interestingly, Henss stated in his affidavit that he was responsible for communicating with Cornyn regarding Defendant Herman's compliance with discovery in this case.  The "Discovery Chronology" provided by Defendants shows that Herman did not provide Answers to Interrogatories until May 4, 2005, and did not complete formal document production until June 29, 2005. This record does not support blamelessness on the part of Defendants.

As far as Cornyn's culpability, this court has reservations regarding whether his failures in this case were totally the result of medical conditions which, according to Dr. Whitehill, adversely affected Cornyn's ability to function in his job as an attorney and which "affect [sic] may have gone back as far as six months."

This court is, of course, well aware of Cornyn's conduct in the Robinson case and agrees with Plaintiff that the "manner in which Attorney Cornyn handled the written discovery in [Robinson] bears a remarkable resemblance to the way he handled the written discovery requests in the instant case."  The court notes that, in Robinson, Cornyn claimed for months that he was unable to locate Peterson (even though Peterson was receiving a monthly pension check from the City of Champaign, also represented by Cornyn). Cornyn, miraculously, was able to locate Peterson approximately one week before the jury trial was scheduled in that case.  This court notes that the

default in Robinson was entered in May 2002 and this court denied Cornyn's motion to vacate the default judgment on June 13, 2002. Whatever problems Cornyn has, medical or otherwise, which caused his conduct in the Robinson case and in this case have, obviously, been in existence for much longer than six months. This court also agrees with Plaintiff that "clients may be held responsible for the acts and omissions of their chosen counsel." In re Telesphere Communications, Inc., 177 F.3d 612, 617 (7th Cir. 1999); see also Easley v. Kirmsee, 382 F.3d 693, 698 (7th Cir. 2004) ("attorney inattentiveness to litigation is not excusable, no matter what the resulting consequences the attorney's somnolent behavior may have on a litigant"); Tango Music, 348 F.3d at 247 ("If the lawyer's neglect protected the client from ill consequences, neglect would become far too common."); Harrington v. City of Chicago, 2004 WL 2973750, at *4 (N.D. Ill. 2004) ("clients are held accountable for the acts and omissions of their attorneys"). "[T]he sins of the agent can be visited upon the principal." Ball, 2 F.3d at 756; see also Firstar Bank NA v. Goldman, 2004 WL 1212099, at *4 (N.D. Ill. 2004) (noting that Defendants voluntarily chose this particular attorney to represent them in this matter).

      This court also agrees with Plaintiff that Attorney Brinkman's claims of lack of knowledge ring hollow. The record shows that Brinkman was receiving electronic notification of everything docketed in this case, including the motions to compel, the orders of the court and Judge Bernthal's Report and Recommendation. Brinkman's claim that he "had no personal knowledge" of these matters evinces a shocking inattention to a case in which he was designated lead counsel along with Cornyn.

      This court additionally notes that it finds completely outrageous Defendants' argument that it was really the court's fault for not informing Defendants directly of Cornyn's failures. As aptly

noted by Plaintiff, any of the Defendants, and certainly their in-house counsel, could easily check court documents at any time. Defendants obviously had enough knowledge to know they should be concerned and their failure to adequately follow this litigation cannot be condoned by this court. This court additionally notes that it has no mechanism to "directly inform" parties, especially sophisticated parties such as Defendants, who are represented by counsel. If in-house counsel Henss wants direct notification from this court, he will need to enter his appearance as counsel of record.

In short, Defendants have not convinced this court that the entry of default was not warranted in this case. However, as much as this court finds all of these arguments lacking in merit, it does have an interest in having cases decided on the merits and concludes that sanctions lesser than default may be appropriate in this case. Accordingly, Defendants' Motion to Vacate Default Judgment (#47) is GRANTED. As noted, Defendants have provided no guidance regarding alternative sanctions. After careful consideration, this court has concluded that the following sanctions are warranted and will be imposed in this case.

First, this court agrees with Plaintiff that Defendants have seriously delayed discovery in this case, to the prejudice of Plaintiff. A discovery deadline of July 15, 2005, was set in this case by Judge Bernthal on June 7, 2004. On July 22, 2005, this deadline was extended by this court to September 30, 2005. This court concludes that Defendants should not be allowed to fail to comply with discovery requests and then proceed with discovery after the discovery deadline has passed. Consequently, the extended discovery deadline, September 30, 2005, will be enforced as to all Defendants. No extensions requested by Defendants will be allowed. In addition, this court will not further extend the deadline for filing dispositive motions of October 28, 2005, as to Defendants.

This court notes that it would be unfair to Plaintiff to allow Defendants' delays to inhibit

Plaintiff from obtaining the discovery he needs in this case. Therefore, this court directs Defendants to cooperate with discovery and Plaintiff's taking of depositions so that Plaintiff's discovery may be completed before the extended deadline. However, Plaintiff may seek additional time if that becomes necessary.

As far as the attorneys in this case, this court concludes that sanctions against both Cornyn and Brinkman are warranted. This court now orders that Cornyn is prohibited from acting as lead counsel in any case in this court for a minimum of one year, until further order of this court, so that all of his representation will be supervised by another attorney or attorneys. This sanction will go into effect following Cornyn's short-term medical leave of absence. This court also notes that Plaintiff has requested an additional award of fees and expenses incurred in defending this Motion. This court concludes that this is a reasonable request, considering that Plaintiff has incurred these attorney fees and expenses through no fault of his own. This court further concludes that the discovery "mess" in this case is at least largely attributable to Cornyn's inaction and Brinkman's inattention to this case. Therefore, this court concludes that these additional fees and expenses will be assessed against Cornyn and Brinkman, personally.

## II.  FOURTH MOTION TO COMPEL

On July 27, 2005, Plaintiff filed his Fourth Motion to Compel Compliance with Written Discovery Requests (#52). Plaintiff detailed various items that Defendants have still not provided in response to written discovery requests. Plaintiff sought an order compelling Defendants to respond fully to the written discovery requests and for an award of reasonable attorney fees and expenses arising from the preparation of the Motion.

On August 2, 2005, Defendants filed their Response to Plaintiff's Fourth Motion to Compel

(#54). Defendants stated that their present counsel has "in every respect cooperated in every way with discovery requests in this matter." Defendants therefore argued that the filing of the Fourth Motion to Compel was completely and totally unnecessary. However, Defendants then go on to acknowledge that various documents have not yet been produced but are "being gathered." Defendants attempt to excuse this delay by stating that objections had been made to the production of some of these documents, and Defendants were not informed until the hearing on July 22, 2005, that these objections were not timely. Defendants also recounted difficulties in responding to interrogatories on behalf of one of the Defendants who is retired and lives out of state.

     This court notes that Defendants were ordered to completely comply with <u>all</u> written discovery requests on more than one occasion. This court is simply astounded that Defendants' new counsel apparently believed Defendants could nevertheless withhold documents and information. This court additionally notes that Defendants have represented to this court that all written discovery had been provided, a statement which Defendants have now implicitly conceded is not true. Based upon the history of this case, and at this very late date, this court is not interested in hearing Defendants' excuses for failing to comply. This court also notes that Defendants, in their Response, have taken issue with Plaintiff's failure to consult with Defendants' new counsel before filing his Motion to Compel. This court concludes that, in this case, where compliance has previously been ordered on more than one occasion, and sanctions for non-compliance have been imposed, the time for requiring personal consultation has long since passed. Defendants need to comply, completely and immediately.

     For the reasons stated, Plaintiff's Fourth Motion to Compel (#52) is GRANTED.

IT IS THEREFORE ORDERED THAT:

(1) Defendants are hereby ordered to pay Plaintiff $632.00 in fees and costs.

(2) Defendants' Motion to Vacate Default Judgment (#47) is GRANTED. Accordingly, this court reinstates Defendants' pleadings and vacates the entry of default against Defendants.

(3) This court imposes alternative sanctions against Defendants, and their attorneys, as follows:

(A) The extended discovery deadline, September 30, 2005, will be enforced as to all Defendants. No additional extension will be allowed as to Defendants, for any reason;

(B) The dispositive motion deadline of October 28, 2005, will not be extended for Defendants;

(C) Attorney Cornyn is prohibited from acting as lead counsel in any case in this court for a minimum of one year, until further order of this court, so that all of his representation will be supervised by another attorney or attorneys, this sanction to go into effect following Cornyn's short-term medical leave of absence; and

(D) Plaintiff is awarded his fees and costs incurred in responding to Defendants' Motion to Vacate. In that regard, Plaintiff should, as he has done in the past, file an affidavit of fees and costs within ten (10) days of the date of this Order. These fees and costs will be assessed against Cornyn and Brinkman, personally.

(4) Plaintiff's Fourth Motion to Compel (#52) is GRANTED. Defendants are again ordered to immediately comply with all outstanding written discovery requests by providing complete answers to all interrogatories and by producing all existing documents responsive to the requests to

produce documents. Plaintiff is awarded his fees and costs incurred in filing the Motion. In that regard, Plaintiff should, as he has done in the past, file an affidavit of fees and costs within ten (10) days of the date of this Order. These costs will be assessed against Defendants.

(5) Defendants' Motion to Compel (#53) remains pending.

ENTERED this 8th day of August, 2005

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE